THORNTON'S case.

The 5th section of chapter 74, Revised Statutes, is void, because it assumes to legislate on a subject—the recaption of fugitive slaves—over which Congress, under the constitution of the United States, possesses the supreme and exclusive power of legislation.

Hempstead Thornton, a negro, presented his petition to this Court, representing that he was illegally restrained of his liberty, upon which a writ of *habeas corpus* was forthwith issued, made returnable instanter. The writ was served upon Strother G. Jones, a constable of the county of Sangamon, whose return to said writ sets out, that he took possession of said Thornton, supposing him to be a fugitive slave, from the state of Missouri ; that he, the said Jones, had a dispatch in his possession from St. Louis, Missouri, stating that slaves had fled from said state to said county of Sangamon, and that he had reason to believe, and does believe that the said Thornton is one of said fugitive slaves ; and further, that he was, at the time said writ of *habeas corpus* was served on him, in possession of said Thornton, and taking him before a justice of the peace, to have him placed in custody as a fugitive slave ; and further, that he had a writ from Jas. W. Keyes, esq., said justice of the peace, requiring him, Jones, to take possession of said. Thornton, and bring said Thornton before him ; which writ was made a part of said return.

The writ of the justice of the peace is as follows :

" State of Illinois, } *ss.*
Sangamon county, }

" *The People of the state of Illinois, to S. G. Jones, constable for said county :*

" You are hereby commanded to bring before me the body of one negro man, supposed to be forty or forty-five years old, with

one leg off, rather dark complexioned, name unknown; also one negro man, supposed to be twenty-five or thirty years old, with one short leg, supposed to be occasioned by the white swelling, dark complexioned, name unknown; also one negro boy, supposed to be nine or ten years old, copper color, name unknown; also one negro woman, supposed to be forty or forty-five years old, copper color, name unknown; and also one negro girl, about five or six years old, copper color, name unknown; as it appears from an affidavit made before me that the above described persons are runaway slaves, and believed to be without free papers, and placed in the jail of said county. Given under my hand and seal, this 16th day of January, A. D. 1850.

"J. W. KEYES, J. P. (SEAL.")

The foregoing writ of the justice of the peace was issued under the fifth section of chapter seventy-four of the Revised Statutes, which is as follows :

" Every black or mulatto person who shall be found in this state, and not having such a certificate as is required by this chapter, shall be deemed a runaway slave or servant; and it shall be lawful for any inhabitant of this state to take such black or mulatto person before some justice of the peace; and should such black or mulatto person not produce such certificate as aforesaid, it shall be the duty of such justice, to cause such black or mulatto person to be committed to the custody of the sheriff of the county, who shall keep such black or mulatto person, and in three days after receiving him, shall advertise him at the court-house door, and shall transmit a notice, and cause the same to be advertised for six weeks in some public newspaper printed nearest to the place of apprehending such black person or mulatto, stating a description of the most remarkable features of the supposed runaway; and if such person so committed shall not produce a certificate or other evidence of his freedom, within the time aforesaid, it shall be the duty of the sheriff to hire him out for the best price he can get, after having given five days previous notice thereof, from month to month, for the space of one year; and if no owner shall appear and substantiate his claim before the expiration of the year, the sheriff shall give a certificate to such black or mulatto person, who, on producing the same to the next Circuit Court of the county, may obtain a certificate from the Court, stating the facts, and

the person shall be deemed a free person, unless he shall be lawfully claimed by his proper owner or owners thereafter. And as a reward to the taker up of such negro, there shall be paid by the owner, if any, before he shall receive him from the sheriff, ten dollars, and the owner shall pay to the sheriff, for the justice, two dollars, and reasonable costs for taking such runaway, to the sheriff, and also pay the sheriff all fees for keeping such runaway, as other prisoners; *Provided, however,* that the proper owner, if any there be, shall be entitled to the hire of any such runaway from the sheriff, after deducting the expenses of the same; *And, provided also,* that the taker up shall have a right to claim any reward which the owner shall have offered for the apprehension of such runaway. Should any taker up claim any such offered reward, he shall not be entitled to the allowance made by this section."

Upon hearing the cause, Thornton was discharged by the Court.

STUART & EDWARDS, for the petitioner:

The statute under which the arrest in this case is made, and under which the detention is attempted to be justified, is unconstitutional and void.

The whole power in relation to the delivery of fugitives from justice, and labor, has been delegated to the United States; and Congress has regulated the manner and form in which it shall be exercised. The power is exclusive. The state legislatures have no right to interfere; and if they do, their acts are void. 2d and 3d clauses of 2d section of 4th article of constitution U. S.; 16 Peters, 617–'18, 623; 4 Wheat. Rep., 122, 193; 12 Wend., 312.

W. I. FERGUSON, for S. G. Jones, the constable having the petitioner in custody.

Opinion by TREAT, C. J.:

The process, by virtue of which the petitioner was arrested and is now detained, was issued under the provisions of the 5th section of the 74th chapter of the Revised Statutes. The manifest object of that section is to facilitate the recaption of fugitive slaves, found within the limits of this state. All of its pro-

visions point directly to such a purpose. By this section, a negro, coming into this state without a certificate of freedom, is presumed to be a runaway slave, and may be arrested and committed to jail as such. The sheriff is then to advertise him for six weeks in a newspaper, giving a particular description of his person. After the expiration of that time, he is to be hired out from month to month, for one year, unless the owner shall sooner appear and reclaim him. A reward is given to the person arresting him, which, together with all reasonable costs and charges, the owner is required to pay. The owner is permitted to receive the hire of the negro after the payment of all expenses. The person arresting him is declared to be entitled to any reward that the owner may have offered for his apprehension. It is evident from a bare inspection of the section, that its sole design is to aid the master in reclaiming his slave escaping into this state. Although the provisions of this section were incorporated into our statute as early as 1819, and seem to be dictated by a proper regard to the rights of citizens of other states, still we are constrained to pronounce them wholly inoperative.

The constitution of the United States declares that, "no person held to service or labor in one state under the laws thereof, escaping into another, shall, in consequence of any law or regulation therein, be discharged from such service or labor, but shall be delivered up on claim of the party to whom such service or labor may be due." Congress, legislating in pursuance of this provision of the constitution, by the act of the 12th of February, 1793, prescribed the mode by which the master may retake and remove his slave found in another state, and imposed penalties against those obstructing him in pursuing the remedy.

The Supreme Court of the United States, in the case of Prigg vs. The Commonwealth of Pennsylvania, 16 Peters, 539, decided that all state legislation, intended either to impede or assist the master in the recaption of his fugitive slave, was null and void, on the ground that the legislation of Congress on the subject was exclusive. Story, Justice, in delivering the opinion of the Court, said: "If this be so, then it would seem, upon just principles of construction, that the legislation of Congress, if constitutional, must supersede all state legislation upon the same subject, and by necessary implication prohibit it. For if

Congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner, and in a certain form, it cannot be that the state legislatures have a right to interfere; and, as it were, by way of compliment to the legislation of Congress, to prescribe additional regulations, and what they may deem auxiliary provisions for the same purpose. In such a case, the legislation of Congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any farther legislation to act upon the subject matter." Taney, Chief Justice, who did not agree with the majority of the Court on this question, remarked: " But as I understand the opinion of the Court, it goes further, and decides that the power to provide a remedy for this right is vested exclusively in Congress; and that all laws upon the subject passed by a state, since the adoption of the constitution of the United States, are null and void; even although they were intended, in good faith, to protect the owner in the exercise of his right of property, and do not conflict in any degree with the act of Congress." Wayne, Justice, in a separate opinion, said it was decided by the Court, " that the power of legislation by Congress upon the provision is exclusive; and that no state can pass any law as a remedy upon the subject, whether Congress had or had not legislated upon it."

That decision is conclusive of the invalidity of this section of our statute. It is void, because it assumes to legislate upon a subject matter over which Congress has exclusive jurisdiction. It follows that the arrest of the petitioner was without authority of law, and he must be discharged from custody.

*Prisoner discharged.*